KEYSTONE LUMBER YARD v. YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY ET AL.

[53 South. 8.]

RAILROAD COMMISSION. *Demurrage and delayage. Rules. Code* 1906, § 3101. *Penalty. Limitation of actions. Free time.*

Under the demurrage and delayage rule, Rule 10, of the Mississippi railroad commission, adopted June 8, 1904:—

(*a*) The delayage charge is not a penalty within Code 1906, § 3101, requiring suits for penalties to be brought within one year; and

(*b*) A carrier is not deprived of the free time specified in the rule because of a delay in transit; but

(*c*) Time not used by the carrier at one point cannot be counted at another.

FROM the circuit court of Yazoo county.

HON. WILEY H. POTTER, Judge.

The Keystone Lumber Yard, a corporation, appellant, was plaintiff in the court below; the Yazoo & Mississippi Valley Railroad Company and the Illinois Central Railroad Company, appellees, were defendants there. From a judgment in favor of plaintiff for a sum much less than its demand it appealed to the supreme court, and the defendant prosecuted a cross-appeal.

This suit was instituted by the plaintiff against the Yazoo & Mississippi Valley Railroad Company and the Illinois Central Railroad Company, to recover damages alleged to be due plaintiff by defendants because of the delay in the transportation of cars of lumber, it being alleged that they were not delivered within a reasonable time as required by the delayage and demurrage rules adopted by the railroad commission. There was a judgment for plaintiff, the court confining recovery to damages accruing within one year prior to the insti-

tution of the suit, and holding that, where there was a delay caused by switching the cars to some point between the point of origination and destination, the railroad company, by the rules of the commission, forfeited all free time allowed at junction points or division ends.   The agreed statement of facts upon which the case was tried is as follows:

### AGREED STATEMENT OF FACTS.

"(1) That rule 10 of the demurrage and delayage rules of the Mississippi railroad commission, adopted June 8, 1904, and effective June 18, 1904, has been in force since said last-named date, and is now, and reads as follows:

" 'Cars detained or held on account of shipper's failure to load, or for want of proper shipping instructions, or by reason of improper loading, when loading is done by shipper, shall be subject to demurrage charges of $1.00 per car per day, or fraction thereof, so detained.

" 'Shipper must be notified as soon as cars improperly loaded are received from him, in which case demurrage shall begin with notification.

" 'Likewise when cars are properly loaded, and shipping instructions given, the railroad agent must immediately issue bills of lading; and if said car or cars are detained or held, and not carried forward within twenty-four hours thereafter, said railroad company shall be liable to said shipper for the payment of $1.00 per car for each day, or fraction of a day that said car or cars are thus detained or held.

" 'Likewise, where cars are detained in transit by being switched to some track between point of shipment and destination, one dollar per car will be charged for each day or fraction of a day of delay thus caused, and no free time will in such case be allowed.

" 'Twenty-four hours' free time will be allowed for delay at the end of the freight division on which shipments originate, and a like period of twenty-four hours' free time for delivery to connecting lines on joint shipments, and a charge of one dollar per car delayage shall be charged for each day or fraction thereof in excess of twenty-four hours same is held at such freight division or connecting point.'

"(2) That the annexed Exhibit A hereto is a correct abstract and statement of what the records of the defendants show with reference to the receipt, delivery, and transportation of the car load lots of lumber therein named, and that said cars were billed from the places named, by the parties named, on the dates named, and received by the plaintiff on the dates named in his declaration, from, and including September 29, 1906, to September 28, 1907, and that said records were correctly kept, and show the facts in connection with the transportation of said cars, as they actually existed.

"(3) That Chatawa, Mississippi, and Stevens, Mississippi, are below McComb, in said state; that from McComb to Canton is a freight division of the I. C. Railroad Company; that Jackson, or Asylum, is a junction of the I. C. Railroad Company with the Y. & M. V. Railroad Company; that from Asylum to Gwin, which is north of Yazoo City, is a freight division of the Y. & M. V. Railroad Company, and that there are no other junctions or freight divisions between Stevens, Mississippi, or Chatawa, Mississippi, and Yazoo City, Mississippi.

"(4) That neither of the defendants has ever paid to the plaintiff or any consignor any reciprocal demurrage or delayage charges on the cars named in said Exhibit A.

"(5) That Exhibit B hereto annexed shows the true date of the bill of lading, the true date of delivery to consignee, with reference to each car, and the Sundays and legal holidays each

car was out, also the free time defendant claims on each, as would be testified to by J. A. Maus for defendant.

"(6) That the car service association rules were in force between and at the points of origination and destination named in plaintiff's declaration.

"(7) That rule 1 of the demurrage and delayage rules of the Mississippi railroad commission, adopted June 8, 1904, and effective June 18, 1904, has been in force since said last-named date, and is now, and reads as follows:

"'Railroad companies shall, within twenty-four hours after the arrival of shipments, give notice by mail, or otherwise, to consignee of arrival of goods, together with weight and amount of freight charges due thereon and on goods in car load quantities; said notices must contain letters or initials of the car, number of the car, and, if transferred in transit, the number and initial of the original car, net weight and the amount of freight charges due on same. No demurrage charge shall be made unless legal notice of arrival is given to consignee.

"'Any railroad company failing to give such notice, and to deliver such freight at its depots or warehouses, or, in case of shipment for track delivery to place loaded cars at an accessible place for unloading, within twenty-four hours after arrival, computing from 7 a. m. the day following the arrival, shall forfeit and pay to the consignee or other party whose interest is affected, the sum of $1.00 per car per day or fraction of a day, on all car load shipments, and one cent per hundred pounds per day or fraction thereof, on less than car load lots, with a minimum charge of five cents for any one package, after the expiration of said twenty-four hours.'"

"(9) That rule 15 of the demurrage and delayage rules of the Mississippi railroad commission, adopted June 8, 1904, and effective June 18, 1904, has been in force since said last-named date, and is now, and reads as follows:

" 'In all computation of time under these rules, Sundays and legal holidays are to be excluded.'

"(10) That Stevens, or Chatawa, Mississippi, are the points from which shipments named in the plaintiff's declaration were made furthest south on the line of the defendant Illinois Central Railroad Company, and that Fernwood, Elton, Norfield, Brookhaven, Cole Springs, and Hazlehurst are north of Mc-Comb City, and south of Jackson, Mississippi, on the line of the defendant Illinois Central Railroad Company, and that Crystal Springs is on said line of railway, between McComb City and Jackson, and that Anding and Flora are on the line of the Yazoo & Mississippi Valley Railroad Company, between Jackson and Yazoo City, Mississippi.

"(11) That, in rendering judgment in this cause, the court shall recite therein its rulings upon the legal questions arising in the case, to which either side shall be considered to have taken exceptions, with like effect as if a special bill of exceptions had been taken on each ruling."

Exhibit A referred to in the foregoing statement of facts is a tabulated statement showing the movement of the various cars of lumber consigned to plaintiff, setting out the method of handling said cars at relay stations or division ends along the line, the time of arrival at and departure from such stations; said information being obtained from the conductor's reports.

Exhibit B shows date of shipment and bill of lading, point from which shipped, divisions and connections, date of arrival at destination, time in which delivery could have been made, time each car was out, free time, including Sundays and legal holidays, and the delayage.

The rules of the Mississippi railroad commission touching demurrage and delayage, adopted June 8, 1904, effective June 18, 1904, are given in the report of the case of *Yazoo, etc., R. Co. v. Keystone Lumber Co.,* 90 Miss. 391, 43 South. 605.

*E. L. Brown,* and *Henry, Barbour & Henry,* for appellant and cross-appellee.

This suit was brought to recover delayage charges, on account of delay in the shipment of carload lots of lumber, occasioned by switching between the points of origination and points of destination under Rule 10 of the Mississippi railroad commission, and covers a period commencing November 11, 1904, and ending with September 28, 1907, the date on which the original declaration in this case was filed.

The amended declaration was filed by the Keystone Lumber Yard on April 27, 1909, and two pleas to it were filed by the railroad company which pleas were met with demurrers. One plea was to the whole of the first count, setting up the statute of limitations of one year, on the idea that the amended declaration set up a new cause of action, barred within one year, and the other special plea, setting up the bar of one year as to all delayage charges accruing prior to September 28, 1906. The court below ruled that a new cause of action was not set up by the amended declaration, but that it simply separated into counts the two causes set up by the original declaration; and therefore sustained a demurrer to the fourth plea. The court below held though, that the one-year limitation applied to this cause of action, and therefore overruled the demurrer to the third plea.

In *Yazoo, etc., Railroad Company v. Keystone Lumber Yard,* 90 Miss. 391, 43 South. 605, the contention of the present appellee was, that rule 10 of the demurrage and delayage rules of the Mississippi railroad commission provided for the imposition of "fines and penalties;" and that it was without the power of the railroad commission to impose the same. This court properly held that the imposition of delayage charges was within the power of that commission, derisively referring to their characterization as "fines and penalties," and saying that

"The law of reciprocal demurrage is founded in the soundest common sense and the highest spirit of equity." In this case, as reported in 49 South. 49, the main contention of the present appellee was that, the same rule 10 provided for the imposition of a penalty within the rule that penal statutes are to be strictly construed, and that, therefore, the word "shipper," as used in that rule, could not be held to comprehend consignee. This contention was flatly repudiated by this court, saying that such ruling by the circuit judge was clearly error.

In the case of *Keystone Lumber Yard v. Yazoo, etc., R. Co.,* 96 Miss. 116, 50 South. 445, the present appellee contended that the same rule provided for the imposition of a penalty within the meaning of the rule that equity will not enforce a penalty, or compel a discovery which would subject a defendant thereto, which contention was emphatically repudiated by this court, which then said: "Whether or not reciprocal demurrage charges are penalties, in any proper legal sense, admits of grave doubt."

It is now contended in the present case, and held by the circuit court below that this same rule 10 of the railroad commission provides for the imposition of a penalty, within the meaning of Code 1906, § 3101, which provides: "All actions and suits for any penalty or forfeiture, on any penal statute, brought by any person to whom the penalty or forfeiture is given, in whole or in part, shall be commenced within one year next after the offense was committed, and not after." This contention, and the ruling of the circuit court below thereon forms the basis of this present appeal.

The court will not, by judicial construction extend the provisions of the statute of limitations so as to include within the statutory bar actions not clearly enumerated as being within the same. George's Digest, page 496, § 182. The doctrine is fully established, that implied and equitable exceptions will not

be engrafted by the courts upon the statute of limitations, and where the legislature has not made an exception in express words, the court will not allow it. George's Digest, page 487, § 101.

That the limitation of one year, provided by Code 1906, § 3101, does not apply to the action here instituted, seems to us perfectly clear from the terms of the statute, which limits its application to causes of actions "for any penalty or forfeiture on any penal statute." No stretch of imagination, much less of judicial construction, can make of an administrative order or rule of the commission a "penal statute," even were delayage charges provided for a penalty within the true meaning of that Code section.

Code 1906, § 3101, is a limitation upon actions founded upon a penal statute, the ground of which is that an offense was committed. The language of the above code section implies this, and excludes the idea that an action given as redress for a wrong done the party bringing the action is thereby limited.

The provisions of Code 1906, § 4989, especially limiting actions to recover the penalty given for cutting trees, shows that the legislative mind, in enacting Code 1906, § 3101, rested upon penalties of the nature we have indicated, and not upon those given as redress for a private wrong. If Code 1906, § 3101, were not limited as indicated, the limitation contained in Code 1906, § 4989, would be useless.

The ruling made by this court in *Bank v. Auze*, 74 Miss. 609, to the effect that a demand for usury forfeited under section 2678, was not within the limitations of section 3101, clearly implies that the construction we have placed upon the latter section is the correct one. Unquestionably, the forfeiture of interest because of a usurious charge, or stipulation, is a penalty, at least to the extent that the legal rate cannot be

collected, but can be recovered back if paid. The action given by Code 1906, § 2678, consists of both redress, to the extent of the amount charged in excess of the legal rate, and of a penalty to the amount of the legal rate, and in this respect provides for the imposition of a penalty in the sense that delayage charges are penalties, if they be such at all. In this case, the court said that only actions *eo nomine* are barred in one year, which makes the construction of the statute much narrower than it is necessary that we here contend for.

The delayage charge is no more a penalty than is a demurrage charge. Demurrage is imposed as compensation for the breach of duty to load or unload promptly, due to the company, in some cases by the shipper, and some by the consignee. Delayage is imposed as compensation for the breach of duty to promptly furnish cars and transport them when loaded, due by the company, in some cases to the shipper, and in some to the consignee.

It will not do to say that delayage is a penalty because imposed without reference to whether or not the breach of duty results in damage to the shipper or consignee. The same logic would make the imposition of demurrage a penalty, for that is imposed whether the company has any use for its cars or not. The law presumes damage from every breach of duty; the question of amount is another consideration. Delayage and demurrage are alike measures of compensation, and can alike be termed penalties, when not made a matter of contract; and neither if fixed by contract, in any proper sense. Both are alike fixed by the railroad commission, under authority of law. They are both penalties, in a general sense only, but being a measure of compensation, are not penalties within the meaning of what are termed penal statutes. 13 Am. & Eng. Ency. of Law, 54, note 23. In this sense only is delayage spoken of as a penalty in the *Searles* and *Keystone Lumber Yard* cases.

While perhaps the reference of the learned circuit court to the construction rule 9 is subject to is correct, the same is wholly outside of any consideration called for by the facts of this case, for no claim is made by the declaration thereunder; it simply provides for the contingency of a failure to furnish cars within five days after demand by the shipper.

The declaration in this case makes demand for no reciprocal demurrage, except on cars which were delayed by being switched at a point between origination and destination, and not a junction or freight division, and no other item was allowed by the judgment appealed from.

The judgment of the court below, under agreement of counsel submitting the cause, recites: "Under the rules of the Mississippi railroad commission, delay in the transportation of cars by being switched between points of origination and points of destination, as a matter of law, causes a forfeiture by the defendants of all free time, which, but for such delay, they would have been entitled. For example, on a shipment originating at Chatawa, destined for Yazoo City, the defendants, in the event no delay be caused by being switched to some point between the two stations named, would be entitled to one day at Chatawa, one day at McComb, a freight division, one day at Jackson, a junction point, and one day at Yazoo City as free time, all of which would be forfeited by the defendants by delay occasioned because of switching to some point between Chatawa and Yazoo City."

This construction of the rule was strictly adhered to in finding the amount for which judgment was given, and it seems clear that the interpretation of the court below needs no argument to support it.

The contention made on behalf of the appellee in the court below was that, although a car was delayed by being switched as forbidden by rule 10, if such car arrived at the point of

destination within the period of the whole free time allowed, plus the time actually in transit, no delayage charge was recoverable therefor. This construction is the basis of the defendant's exhibit to the agreed statement of facts, by which exhibit it is worked out that the railroad company was liable for only $83, of which contention and calculation the circuit court below very properly disapproved, for the reason that the contention absolutely disregards the plain provision of the rule that, if a delay occurs by reason of being switched, no free time shall be allowed.

*Mayes & Longstreet,* for appellee and cross-appellant.

That the demurrage and delayage rules are penalties seems to be well settled beyond all cavil by the supreme court in the case of *Keystone Lumber Yard v. Yazoo, etc., Railroad Co.,* 90 Miss. 391, 43 South. 605, where it reaffirms a statement in the case of *Searles v. Railroad Co.,* 85 Miss. 947, as follows: "It will be noted that in the *Searles case* the court characterized the charge for demurrage as 'penalties for undue detention of cars' and says that they were devised, not for the benefit of the railroad companies but for the benefit of the public at large;" and, again: "When the legislature has acted and dealt with this whole matter of demurrage and reciprocal demurrage, both exclusively in the interest of the public at large, and neither with the slightest purpose of benefiting either the shipper or consignee in any particular case;" and, further: "The purpose of all these charges is to benefit the public at large."

A comparison of other statutes with this rule also demonstrated that it is penal, and that the legislature having authorized the railroad commission, Code 1906, § 4843, to adopt this rule, it must be governed by the same principles. Prior to the Code of 1906, the statute with regard to cattle guards

and plantation crossings, Code 1892, § 3561, did not contain the word "penalty" therein. That code section provides as follows: "For any failure so to do the railroad shall be liable to pay two hundred and fifty dollars to be recovered by the person interested."

The demurrage rule number 10 provided as follows: "Said railroad company shall be liable to said shipper for the payment of one dollar per day, etc., and one dollar per car will be charged for each day or fraction of a day, etc." Now, if Code 1892, § 3561, is held to be penal, why should not these rules come under the same construction? The statute with regard to cattle guards is a penal one. *Railroad Co. v. Anderson,* 76 Miss. 586. The statute is one visiting a penalty. *Railroad Co. v. Sallis,* 89 Miss. 636, 42 South. 202; *Railway Co. v. Murrell,* 78 Miss. 446, 28 South. 824; *Searles case,* 85 Miss. 543.

That these delayage charges are mere penalties, and not in the nature of liquidated damages, appears also from the declaration itself, for the plaintiff in the second count is asking for actual damages.

If we are correct in our contention that these charges are penalties, and the statutes or rules under which they are recoverable are penal, the next question which arises is, should the plea to the whole declaration be sustained, or should it be sustained only as to those items which accrued prior to September 28, 1906. Our contention is that the plea ought to be sustained to the whole declaration; that there is a new and distinct cause of action set up in the amended declaration; and we base it upon the decision of this court in *Keystone Lumber Yard v. Yazoo, etc., Railroad Co.,* 94 Miss. 192, 47 South. 803. And see, also, *Cox v. Mortgage Co.,* 88 Miss. 88, 40 South. 739.

But if we are mistaken as to the amended declaration as a whole setting up a new cause of action, then, on the authorities

quoted above, the demurrer to the special plea setting up the statute of limitations to all delays occurring prior to one year before the filing of the suit, should be overruled and the plea held to be good.

Learned counsel for appellant insist that if the charges allowed for delayage are penalties, then the charges allowed for demurrage are penalties; and they emphasize the fact that in the *Searles case, supra,* the controversy was with respect to the right of the railroad company to demand demurrage for the unreasonable delay and use of cars.   But there is a patent and essential difference between the nature of demurrage penalties and delayage penalties; delayage penalty is a penalty pure and simple imposed on the company as a punishment for unreasonable delay.   It is given without any reference to actual damage. Under the ruling of this court, and the reasoning which can be made thereunder, a consignee may sue for actual damage resulting from any unreasonable delay in shipment, and he may also sue for the penalty.   The actual damages are given to compensate him for the lack of use of the shipment.   The delayage penalty has no reference to actual damage, it exists independently of it, and cannot be pleaded as a defense to a demand for actual damages.   On the other hand, the demurrage charges allowed to railroad companies is to compensate the railroad company for the use of the car.   Demurrage is not a penalty, but a compensation.   Right to demurrage charges existed long before the creation of railroad commissions, or the enactment of demurrage and delayage laws.   All the courts of the land held that railroad companies had a right to receive pay for use of their cars, likening this right unto those of warehousemen furnishing facilities.   The demurrage charges made by the railroad companies were required to be reasonable, and could not exceed the value of the use of the car while kept in the possession of the consignee.

It is further insisted by appellant that a consideration of the case of *Bank v. Auze,* 74 Miss. 625, which was a case dealing with the question of usurious interest was not an action to recover a penalty, and they attempted to compare the right of the maker of a note to recover usurious interest to that of a consignee suing for a delayage penalty. But the two cases are essentially different in principle. The statute with respect to usurious interest, now Code 1892, § 2348, fixed the legal rate of interest at six per centum, and the maximum rate which may be contracted for at ten per centum.

The provisions of Code 1892, § 2348, that all interest shall be forfeited is in a measure in the nature of punishment, but is not a penalty in the direct sense of the word. In the first place, usurious interest, independently of the statute, cannot be recovered in a suit at law. This is a disability to sue for an execution of contract, and usurious interest, when paid, may be recovered back because the statute especially gives a right of action. The statute refers entirely to matters of contract between maker and payee, and in the face of the statute is a prohibition against a higher rate than ten per centum, and a right to recover it back if a higher rate has been paid. In the *Auze case* the court, in the body of the opinion, referring to the nature of the right given by the statute, refers to it frequently as a "right of action" created by law.

The court below erred in its interpretation of those portions of rule 10 which refer to the delay of cars in transit, and the penalties therefor.

In order to understand fully the provision of paragraph 4 of rule 10, it is necessary to consider it in connection with paragraph 5. While in the copy of the rules there is a space left between these paragraphs, at the same time, in order to understand either or both of these paragraphs, it is proper that

they should be read as if one was but a continuation of the other.

It is apparent that the object of these paragraphs of rule 10 is to fix the time within which a railroad company should reasonably be allowed to handle cars at division ends and connecting points. This time or period the commission has fixed at twenty-four hours for each division and on junctional points.

The practical effect of the construction by the court below would be to deny to the railroad company twenty-four hours free time at the point of destination; and, therefore, in a suit for penalties, the consignee, under such a construction, would have a right to insist that he should recover one dollar per day for as many of the four days as he might contend and prove were not actually needed for the transportation of a car of lumber from Chatawa to Yazoo City. It would increase the liability of the railroad company for the penalty. The expression in the fourth paragraph of rule 10 that where cars are detained in transit by being switched to some track between points of shipment and destination one dollar per day for each car will be charged for every day or fraction of a day of delay thus caused, and no free time will in such case be allowed, means that if a car in transit is detained at Jackson for more than twenty-four hours, for this delay over twenty-four hours the consignee may recover one dollar, and that at Jackson no free time can be claimed. The rule says that where the cars are detained in transit by being switched to "some track," and delayed more than twenty-four hours, no free time in such case will be allowed. That is to say that no free time will be allowed at Jackson, because the car was kept at Jackson more than twenty-four hours.

The words "in such case," in paragraph 4 of rule 10, mean a case where the car was detained more than twenty-four hours by being switched to some track at the place where the delay

of more than twenty-four hours occurred; and that the for-feiture of free time is for unreasonable and unlawful act at a particular time and place. This is clearly illustrated by read-ing paragraph 5 in connection with paragraph 4.

But whether our contention that a railroad company must always be given credit on a shipment such as instanced in the opinion of the court below, for four days, plus the reasonable and lawful time for actual movement and transportation of the shipment, is correct or not, it is certain that the construction put on paragraph 4 by the court below is incorrect; and would operate in many instances, as it would do in the present case, to increase the gross amount of penalties that a shipper or con-signee might demand.

If paragraph 4 be considered as a separate, distinct and in-dependent provision, then the contention we make, that the construction by the court below was incorrect, appears all the stronger, because it could then refer only to the delay caused to a car in transit by switching it during transit to some switch track, and the free time referred to in paragraph 4 could only mean that the railroad company would forfeit its right to claim free time at the place where the delay occurred. We submit, therefore, that the action of the court below was correct in adjudging the penalties, if shown to have accrued more than one year before the institution of the original suit, were barred by the statute; but submit that its action in denying the origin of the shipment, or any division end, or at the point of destin-ation, wherever any delay of the car had occurred at any inter-mediate point, was clearly erroneous.

MAYES, C. J., delivered the opinion of the court.

By consent this cause was tried before the judge on an agreed statement of facts and a jury waived. The facts will be set out in the report of the case, therefore it would be useless to

incumber this opinion with a full statement. The suit is instituted by appellant for the purpose of recovering from the railroad company certain delayage charges, claimed by appellant under paragraph 4, rule 10, of the Mississippi railroad commission. This paragraph of the rule provides that a recovery may be had by the consignor or consignee of goods shipped over the railroad "where the cars are detained in transit by being switched to some track between point of shipment and destination," of one dollar per car for each day or fraction of a day that any such car may be thus delayed. The appellant seeks to recover for a period dating back three years before the filing of the suit. To the declaration several pleas were filed and demurred to by appellants. We do not deem it necessary to follow the course of pleading further than to say that one of the principal questions raised is as to the application of section 3101, Code 1906; the provisions of that section being that all suits for penalties or forfeitures shall be commenced within one year. The contention of the railroad is that the delayage charges of one dollar per day, fixed by the railroad commission, are penalties, and appellant is precluded by the statute from any recovery except for charges accruing within one year from the date of the suit. The question presented is one not heretofore decided by this court, but in the case of *Keystone Lumber Co. v. Yazoo, etc., R. Co.,* 96 Miss. 116, 50 South. 445, this court strongly intimated that these charges were not penalties in any true sense. We do not think that anything said in the case of *Yazoo, etc., R. Co. v. Keystone Lumber Co.,* 90 Miss. 391, 43 South. 605, or in the case of *Railroad Company v. Searles,* 85 Miss. 520, 37 South. 939, was intended to commit the court to the contention here made by the railroad company. In the above cases the court was not considering the question at the time. For convenient description the court used the word "penalties" in speaking of these

charges, but had no thought of any legal characterization as such. The whole idea of this rule of the commission is to afford the injured party, consignor, or consignee, a fixed compensation when a railroad delays the transportation of goods. *Keystone Lumber Co. v. Yazoo & Mississippi Valley Railroad Company,* 47 South. 803, is cited to the effect that either consignor or consignee may avail of this rule. Of course, the public derive an incidental benefit from these rules also, but the immediate purpose of the rule in so far as it allows the injured party certain fixed charges for delay is to afford compensation. When goods are delayed in transit, the exact amount of damage caused thereby is often a matter of difficult proof. In order to obviate these difficulties, and secure to the public the benefit that accrues by compelling reasonably prompt handling of the railroad traffic, these rules were promulgated by the railroad commission. The case of *State v. Atlantic Coast Line,* 56 Fla. 617, 47 South. 969, is a case directly deciding this question. The case just referred to is so thoroughly decisive of this question, and so well reasoned, that we can do no better than quote that part of the opinion to be found on page 649, 56 Fla., on page 980, 47 South., which is as follows, viz.:

"The charge allowed a carrier for cars unduly delayed by a shipper is technically called 'demurrage,' is remedial in its nature, and is clearly not a penalty. So, likewise, the reciprocal charge allowed a shipper for freight unduly delayed on loaded cars by the carrier is in its nature remedial, and is not a penalty. The right of the shipper to have his goods promptly transported by a common carrier is a valuable right. See *New Mexico ex rel. McLean v. Denver & Rio Grande Railroad Company,* 203 U. S. 38, 27 Sup. Ct. 1, 51 L. Ed. 78; Moore on Carriers, 246. The shipper has as much right to relief from a delay in transporting his freight when it is properly offered

as the carrier has to relief from a delay of a car unduly held for loading. There may be no injury or depreciation in the value of the car or the freight by a delay, but the right to promptness and convenience exists and may be enforced, and the public has an interest in the prompt movement of cars needed for other shipments. The purpose designed to be accomplished in allowing this reciprocal charge, or in imposing this reciprocal liability, is to afford the carrier and the shipper a limited cumulative remedy to prevent the delaying of cars and of freight, and to incidentally serve the public welfare by stimulating and facilitating the transportation of freight. The statute expressly provides for cumulative remedies as being peculiarly appropriate to this public service, and specially authorizes the commission to do everything proper and necessary to facilitate intrastate transportation.

"A statute may provide for remedial redress to an individual injury by the breach of a public duty, in addition to the penalty imposed to punish for the injury to the public. In determining whether a statute is penal in the strict and primary sense, a test is whether the injury sought to be redressed affects the public. If the redress is remedial to an individual and the public is indirectly affected thereby, the statute is not regarded as solely and strictly penal in its nature. See *Huntington v. Attrill,* 146 U. S. 657, text 668, 13 Sup. Ct. 224, 36 L. Ed. 1123; *Bell v. Farwell,* 176 Ill. 489, 52 N. E. 346, 42 L. R. A. 804, 68 Am. St. Rep. 194; *Gardner v. New York & N. E. R. Co.,* 17 R. I. 790, 24 Atl. 831. * * * It is a reasonable provision intended to aid in securing the carrier against the undue detention of cars needed for other shippers, whether the car is injured by the delay or not; and to afford the shipper some speedy and practicable relief against loss or inconvenience from undue delay of freight loaded in cars, whether the value of the freight is affected by the delay or not. The interests of

the carrier, of the shipper, and of the public require of a carrier prompt movement of cars loaded with freight, in order that the carrier may serve all properly offering." See, also, *Brady v. Daly,* 175 U. S. 148, 20 Sup. Ct. 62, 44 L. Ed. 109; *Atlanta v. Chattanooga Fdy. & Pipe Wks.,* 127 Fed. 23, 61 C. C. A. 387, 64 L. R. A. 721; note on page 964, vol. 13, Am. & Eng. Ann. Cas.

On cross-appeal it is contended by the railroad company that the learned circuit judge was wrong in holding that, under paragraph 4 of rule 10, wherever it was shown that cars were detained in transit by being switched to some track between point of shipment and destination, no free time should thereafter be allowed during the transit of the goods. We think the interpretation of this rule by the trial court was incorrect, and that paragraph 4 of rule 10 only deprives the railroad company of all free time, or claim therefor, when the cars are switched to a track between point of shipment and destination, at the place where this prohibited switching is done. As paragraph 4 inhibited the detention of cars in transit "by being switched to some track between point of shipment and destination," and imposed compensatory delayage charges in favor of the consignor or consignee of one dollar per day when same was done, allowing no free time in such case to the railroad company, it would seem unnecessary for the rule to go further, and expressly say that "in such case" no free time shall be allowed, as this result would seem to follow from the rule, but the railroad commission thought to remove all doubt as to this, and in so doing have not in any way weakened the force of the rule, or broadened its scope. The rule applies to the case made by it and to none other. Its purpose is to shut out any claim of free time when the delay occurs by a breach of that paragraph, but only at the point where it occurs and none other. Under

paragraph 5 certain free time is allowed. Under it twenty-four hours' free time is allowed at the end of the freight division on which the shipments originate, and, under this same paragraph, twenty-four hours' free time is also allowed at connecting lines on joint shipments. Free time is allowed at these points, not because of any inclination on the part of the commission to show greater indulgence to railroads than to shippers, but because the commission know that at these points delays in transportation must occur of necessity. At the points enumerated in paragraph 5 trains are usually rearranged and cars distributed to be sent on such routes as may be necessary for them to reach their destination. The commission desired to keep its regulations within reasonable bounds and inflict no unreasonable hardships, hence the allowance of free time at these points. If the railroad company violates rule 4, that rule provides its own compensation to the injured party, and if he get compensation that is all the concern that he has about the matter, but the same necessity exists, in so far as the railroad is concerned, for time to rearrange its trains at the points enumerated in paragraph 5. As the railroad has compensated for the breach of its duty under paragraph 4, its scope should not be made to extend so as to create a forfeiture of the free time allowed by paragraph 5. The rules are susceptible of no such construction, and the commission had no such purposes. The shipper is provided with compensation for injurious delays at points not allowed as free, and the carrier has free time at all places where it is allowed by the rules. Where free time is allowed it is not lost save in the manner provided in the particular paragraph so specifying. It follows from what we have already said that the court erred on direct appeal in holding that the one year's statute of limitations had any application to this suit, and the cause is reversed and remanded on direct

appeal. The court also erred in the cross-appeal in holding that no free time is allowable.

Reversed and remanded on direct appeal and cross-appeal.

After the renditions of the foregoing opinion counsel for the appellant and cross-appellee submitted an elaborate suggestion of error.

And thereafter the court delivered the following opinion:

### ON SUGGESTION OF ERROR.

Per Curiam:—In response to the suggestion of error filed by appellants in this cause we deem it only necessary to say that the rules of the commission have two objects in view. They are: First, to compensate the shipper for unnecessary delays; and, second, to compel reasonable expedition on the part of the railroad company. Free time is allowed at certain points designated by the rules of the railroad commission, and this free time can be used only at the points where same is allowed. In other words, if there be three points on the line of shipment at which free time is allowed, but no free time is used by the railroad at two of those points, it cannot consume all the free time allowed at different points at the third. Free time is allowed at the points designated in the rules because the railroad commission conceived that at these points it was necessary. If the free time be not used at the points where allowed, it cannot be used at any other, even though it result in hastening the shipment to the point of destination many days before it would reach there if all the free time were used at the various points where allowed. The suggestion of error is overruled.