ANN ARBOR RAILROAD CO. v. MICHIGAN RAILROAD COMMISSION.

RAILROADS — MICHIGAN RAILROAD COMMISSION — STATUTES — CONSTITUTIONAL LAW—INTERSTATE COMMERCE.

> Rules promulgated by the Michigan Railroad Commission, establishing and enforcing demurrage rates, must be limited to commerce within the State, since section 8 of Act No. 300, Pub. Acts 1909, limits the authority of the commission to the regulation of transportation within the State of Michigan.

Appeal from Wayne; Donovan, J. Submitted June 20, 1910. (Docket No. 87.) Decided September 28, 1910.

Bill by the Ann Arbor Railroad Company and others against the Michigan Railroad Commission to enjoin the

enforcement of certain rules.   From an order sustaining a demurrer to the bill, complainants appeal.   Reversed.

*Orla B. Taylor* and *Charles F. Delbridge* (*Henry Russel, O. E. Butterfield, B. S. Warren, Harrison Geer, L. C. Stanley, Seward L. Merriam* and *James McNamara,* of counsel), for complainants.

*John E. Bird,* Attorney General, and *Hal H. Smith* (*Beaumont, Smith & Harris,* of counsel), for defendant.

BLAIR, J.   On January 1, 1909, the railroads of the lower peninsula of Michigan, which are members of the Michigan Car Demurrage Supervising Bureau, promulgated and placed in force a set of demurrage rules.   These rules were filed by each railroad with the Interstate Commerce Commission.   During the year 1909 the National Association of Railroad Commissioners, composed of the railroad commissioners of the several States, and the Interstate Commerce Commission, had under consideration a proposed set of demurrage rules intended to be effective throughout the United States.   These rules were finally adopted by the Association of Railroad Commissioners by majority vote, and were indorsed on December 18, 1909, by the Interstate Commerce Commission.   They have since been adopted and filed by the various railroads as effective in most of the States, and the railroad commissions of many of the States have also adopted them.

The complainant railroads in this case decided to adopt these rules as the demurrage rules upon their various lines of railroad in the State of Michigan, and announced to shippers that they would become effective May 1, 1910, and each railroad has filed the rules with the Interstate Commerce Commission.   On February 3, 1910, the Michigan Railroad Commission, which did not agree with the National Association of Railroad Commissioners and the Interstate Commerce Commission, but felt that rules more advantageous to the shippers of Michigan should be adopted, promulgated another set of demurrage rules, and

ordered that the same become effective on March 1, 1910. These rules apply to the loading and unloading of cars coming from or going to points in other States as well as to those whose travel is within the State. They were promulgated in the form of an order in a proceeding before the Commission commenced June 13, 1908, by the Michigan Manufacturers' Association against the railroads which are complainants in this case, and in which no decision was made until after the adoption of the rules by the National Association of Railroad Commissioners. On March 1, 1910, complainants filed the bill of complaint in this cause, praying that the Michigan Railroad Commission be restrained from enforcing the last mentioned rules as to interstate commerce for the following reasons:

"(a) By the express terms of the act, under which said defendant exists, its jurisdiction, power, and authority are limited to the transportation of property between points within the State of Michigan and to the receiving, switching, delivering, storing, and handling of such property, and to all charges connected therewith, including icing and mileage charges.

"(b) The legislature of the State of Michigan has never conferred, nor attempted to confer, upon the defendant jurisdiction, power and authority to promulgate and enforce demurrage rules as to interstate commerce, and property and cars in such commerce.

"(c) The legislature of the State of Michigan has never adopted, nor attempted to adopt, demurrage rules or laws relative to interstate commerce and property and cars in such commerce, and is without power so to do.

"(d) Interstate commerce begins as a matter of law when the loading of the property intended for interstate shipment into the car is commenced, and does not end until the actual removal of the property from the car at final destination, and is during said entire period within the jurisdiction of congress and the Interstate Commerce Commission, and entirely beyond the jurisdiction of the legislature of the State of Michigan.

"(e) The legislature of the State of Michigan was and is without authority to enact section 8 of said Act No. 300, Pub. Acts 1909, which provides that the defendant Commission shall have power to fix a reasonable *per diem*

demurrage to be paid for the detention of cars by shippers or consignees, and said provision of said act is unconstitutional and void.

"(f) If said act and paragraph 8 thereof aforesaid or either of them are intended to apply to interstate commerce as defined by the acts of congress aforesaid, said act and said paragraph are in violation of paragraph 3 of section 8 of article 1 of the Constitution of the United States.

"(g) The Interstate Commerce Commission of the United States, which exists under and by virtue of act of congress of February 4, 1887, as amended, has complete, sole, and exclusive jurisdiction, power and authority over the subject of demurrage upon interstate commerce as defined in said act, and upon property and cars in such interstate commerce, and the defendant has no jurisdiction, power, or authority with reference thereto.

"(h) Any demurrage rules whatsoever adopted and promulgated by the defendant Commission which constitute a burden upon or a regulation of commerce with foreign nations and among the several States are void for the reason that said Commission has no jurisdiction, power, or authority to adopt or enforce the same.

"(i) The demurrage rules promulgated by the defendant (Exhibit C), if enforced, will constitute a burden upon, and regulation of, interstate commerce."

The Railroad Commission filed a demurrer to said bill of complaint, and the issue as to its power and authority is clearly framed. The reasons set forth in the demurrer are as follows:

"(a) There is no equity in the bill contained.

"(b) The service for which the complainants make the demurrage charge, so called, and to which the demurrage rules, so called, apply, is intrastate commerce, and not interstate commerce, and therefore within the sole jurisdiction of the Michigan Railroad Commission.

"(c) The service for which the demurrage charge is made and to which the demurrage rules apply arises, in the case of an interstate shipment, either before the car becomes an instrumentality of interstate commerce or after it has ceased to be such instrumentality, and is therefore an intrastate service, and its regulation is within

the sole jurisdiction of the Michigan Railroad Commission.

"(*d*) Demurrage rules do not directly affect interstate commerce, since they relate to matters arising either before the interstate movement begins or after it ceases.

"(*e*) Demurrage rules, if they at all affect interstate commerce, do so only indirectly, and may, therefore, in the absence of express action by the congress of the United States, be prescribed by the State authority.

"(*f*) The congress of the United States neither through itself nor through the Interstate Commerce Commission has prescribed rules governing demurrage and demurrage charges. The recommendations of the Interstate Commerce Commission are only advisory.

"(*g*) The rules promulgated by the Michigan Railroad Commission are regulations conducive to the comfort and convenience of the citizens of the State, and therefore within the power of the Michigan Railroad Commission to make.

"(*h*) The rules promulgated by the Michigan Railroad Commission do not burden interstate commerce, but, even if it can be said that they indirectly burden it, they relate to matters merely incidental to interstate commerce and within the power of the State to regulate, at least in the absence of action by congress.

"(*i*) The act creating the Michigan Railroad Commission, in express terms and by implication, empowers that commission to make and prescribe reasonable demurrage rules, and such act and such provisions are valid and constitutional, and not in conflict with the Constitution of the United States or any part thereof.

"(*j*) The rules prescribed by the Michigan Railroad Commission are reasonable rules. Their natural and reasonable effect will be to assist the movement of interstate commerce and not to burden or hamper it."

The circuit court sustained the demurrer and complainants appeal to this court.

The power to promulgate demurrage rules and the duty to do so is expressly conferred and enjoined upon the defendant by section 8 of Act No. 300 of the Public Acts of 1909, entitled:

"An act to define and regulate common carriers and the receiving, transportation and delivery of persons and prop-

erty, prevent the imposition of unreasonable rates, prevent unjust discrimination, insure adequate service, create the Michigan Railroad Commission, define the powers and duties thereof and to prescribe penalties for violation hereof."

Section 3 of the act defines and interprets the terms used in and the scope of the act. Subdivision "*d*" of the section reads as follows:

"The provisions of this act shall apply to the transportation of passengers and property between points within this State, and to the receiving, switching, delivering, storing and handling of such property, and to all charges connected therewith, including icing and mileage charges."

It is apparent, therefore, that, by the terms of the act creating the defendant and defining its powers, its authority to promulgate demurrage rules is expressly limited to cases where the property has been or is to be transported "between points within this State." It becomes unnecessary, therefore, to consider the power of the legislature to grant the authority claimed for the defendant or the other interesting questions discussed in the briefs of counsel, since the limitations of the act creating it negative any authority on the part of defendant to establish and enforce demurrage rules where the transportation is interstate. It follows that defendant's demurrage rules must be limited in their application to intrastate transportation.

The order sustaining the demurrer is reversed, and a decree may be entered in favor of complainants in accordance with this opinion, but without costs.

OSTRANDER, HOOKER, McALVAY, and STONE, JJ., concurred.