[No. 13746.    Department One.    January 13, 1917.]

THE STATE OF WASHINGTON, *on the Relation of Chicago, Milwaukee & St. Paul Railway Company, Appellant,* v. PUBLIC SERVICE COMMISSION *et al., Respondents.*[1]

CARRIERS—REGULATION—RECIPROCAL DEMURRAGE—CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWERS. Since reciprocal demurrage charges for delay in failing to furnish a shipper with cars, after demand, though called a penalty, is remedial redress, administrative in its essence and incidental to administrative functions, and since the constitutional division of governmental powers into three separate departments applies only in a limited sense and does not restrict one set of officers to one department exclusively, Rem. Code, §§ 8626-59, 8626-85, empowering the public service commission to fix the time for furnishing cars and provide the penalty to be paid shippers for delays, is not unconstitutional as an unlawful delegation of legislative powers, in contravention of Const., art. 2, § 1; sections 8626-10 and 8626-11, having imposed in express terms the duty to promptly furnish cars.

SAME. Though judicial power may be conferred by the legislature upon the public service commission, that body cannot assume the legislative function and confer such power upon itself; hence the public service commission cannot, under authority to adopt rules governing reciprocal demurrage charges for failure to furnish cars, adopt a rule providing that, when any dispute or controversy arises between shipper and carrier with reference to the application of the rules for demurrage, a complaint shall be filed with the commission and a trial had subject to review in the same manner as other decisions and orders of the commission.

SAME—RECIPROCAL DEMURRAGE—REMEDIES OF SHIPPER. The statute providing no method for the collection of demurrage charges to be paid to shippers for delay in furnishing cars, the remedy of the shipper is by action at law; there being no right without a remedy.

SAME — RECIPROCAL DEMURRAGE — INTERSTATE COMMERCE — STATUTES—CONSTRUCTION. Although the terms of Rem. Code, §§ 8626-59, 8626-85, empowering the public service commission to fix the time for furnishing cars and provide the penalty to be paid shippers for delays is broad enough to apply to cars ordered for interstate commerce, the dominant purposes of the act, to be gathered from all of its provisions, to regulate only intrastate commerce must be read into all its provisions.

[1]Reported in 162 Pac. 523.

SAME. It will not be assumed that the legislature intended to adopt the construction of other state courts that such rules applied to both kinds of commerce, when to do so would make the law unconstitutional.

Appeal from a judgment of the superior court for Thurston county, D. F. Wright, J., entered June 30, 1916, in favor of the defendants, affirming an order of the public service commission, after a hearing upon a writ of review. Reversed.

*F. M. Dudley* and *F. M. Barkwill*, for appellant.

*The Attorney General* and *Scott Z. Henderson, Assistant* (*C. E. Arney, Jr.*, of counsel), for respondents.

ELLIS, C. J.—This is an appeal from a judgment entered in the superior court of Thurston county in a proceeding to review an order of the public service commission ordering that appellant railway company pay to respondent warehouse company a certain sum of money, with interest, for the failure to furnish cars in accordance with the reciprocal demurrage rules promulgated by the commission. These rules were issued and made effective as of November 5, 1912, and are numbered from one to twelve, inclusive. Prior to the transaction here involved, rules three and twelve were amended. The questions presented by this appeal relate to the validity of these rules. Rules three and twelve, as amended, are as follows:

"Rule 3. When a shipper makes written application to a railroad company for a car or cars, not exceeding ten cars in number during any one day, to be loaded with any kind of freight embraced in the tariffs of said company, stating in such application the character and approximate amount of the freight and its destination, the said railroad company shall furnish the same within six days from seven A. M. of the day following the receipt of said application; and when a shipper making application specifies a future date on which he desires to make a shipment, giving not less than six days' notice thereof, computing from seven A. M. the day following

the receipt of said application, the railroad company shall furnish said cars on the date specified in the application; Provided, in those cases where less than daily service is afforded, the six days' time above specified shall be extended to ten days; Provided further, that at the terminal points of Seattle, Tacoma and Spokane the six days' time above specified shall be reduced to three days; and, provided further, that carriers shall not be required to furnish equipment beyond the ability of the shipper to load, and Provided further, that this rule shall not be construed as requiring carriers to furnish cars for the transportation of freight destined to points upon foreign roads, such question being preserved for determination under section 24, Chapter 117, Laws of 1911 of the State of Washington.

"In case the shipper in his written application requests notification of the date of placement of the car or cars for loading, it shall be incumbent upon the railroad company to notify such shipper not less than twenty-four hours prior to the day and date upon which the car or cars will be placed stating the day and date of placement. When the application does not contain such request, it shall not be obligatory upon the company to give such notice.

"For failure to furnish cars or to give notice within the time prescribed in this rule, the railroad company shall forfeit and pay to the shipper applying for car or cars, the sum of one dollar per car per day, or fraction thereof."

"Rule 12. When any dispute or controversy arises between shipper, consignee and carriers with reference to the application or operation of any of these rules, or the collection or payment of demurrage charges thereunder, complaint must be made to the Public Service Commission, and its decision thereof shall have the same effect and be subject to review in the same manner as other decisions and orders of the commission."

In January, 1913, the warehouse company made application to the railway company, pursuant to rule 3, for cars for loading grain at Castleton, Washington, to be shipped to points on Puget Sound. The cars were not furnished within the time prescribed by the rule. In July, 1913, the warehouse company filed its complaint with the public service commission pursuant to rule 12, alleging the failure of the

railway company to furnish the cars, and praying that an order be made requiring it to pay to complainant reciprocal demurrage under rule 3 in the sum of $98. In September, 1913, in response to citation, the railway company served and filed a demurrer and an answer to the complaint. The demurrer challenged the sufficiency of the complaint and the jurisdiction of the commission on the ground that the commission is without authority, under the public service commission law, to fix any penalty to be paid to shippers applying for cars in case of failure on the part of the railway company to furnish such cars as provided by rule 3 of the reciprocal demurrage rules. We find it unnecessary further to notice the answer, since every question material to the inquiry, as we view it, is presented by the demurrer and appellant's motion to dismiss. On September 18, 1913, testimony was taken before the commission at Rosalia, Washington, a copy of which testimony is attached to the transcript before us. At the beginning of the hearing before the commission, the railway company moved to dismiss the complaint upon the ground that it violated section 3 of article 1 of the state constitution, section 1 of the Fourteenth Amendment to the Federal constitution, section 8 of article 1 of the Federal constitution, and the act of Congress regulating commerce, as amended June 29, 1906, April 13, 1908, and June 18, 1910. On June 1, 1915, the public service commission filed its findings of fact and thereon entered an order as follows:

"It is ordered, that defendant pay to complainant, H. Schlaefer Warehouse Company, the sum of $67 with interest on $14 from January 31, 1913; on $12 from February 5, 1913; on $41 from February 7, 1913, until paid."

The railway company petitioned for a writ of review, alleging, among other grounds, that the rules in question were invalid and that the commission had no jurisdiction to enter the order. The writ was issued, return thereon made, the cause was argued before the superior court of Thurston county, and judgment was entered affirming the order of the

commission on June 30, 1916. From that judgment, this appeal was taken.

I. Appellant railway company first contends that the commission had no authority to promulgate reciprocal demurrage rule 3 prescribing penalties for failure to furnish cars. This contention is based upon the claim that the sections of the statute conferring the power to make the rules are void as attempting a delegation of legislative power in contravention of section 1, article 2, of the state constitution vesting the legislative power in the senate and house of representatives. Referring to the public service commission law of this state, chapter 117, Laws of 1911, page 538, we find provisions as follows:

"Sec. 10. Every common carrier shall under reasonable rules and regulations promptly and expeditiously receive, transport and deliver all persons or property offered to or received by it for transportation. . . .

"Sec. 11. Every railroad company shall, upon reasonable notice, furnish to all persons and corporations who may apply therefor and offer property for transportation sufficient and suitable cars for the transportation of such property in carload lots. In case at any particular time a railroad company has not sufficient cars to meet all the requirements for transportation of property in carload lots, all cars available for such purpose shall be distributed among the several applicants therefor, without unjust discrimination between shippers, localities or competitive or noncompetitive points.

"Sec. 59. The commission shall have, and it is hereby given, power to provide by proper rules and regulations the time within which all railroads shall furnish, after demand therefor, all cars, equipment and facilities for the handling of freight in carload and less than carload lots, . . . the distance that freight shall be transported each day after receipt, the time within which consignors or persons ordering cars shall load the same, and the time within which consignees and persons to whom freight may be consigned shall unload and discharge the same and receive freight from the freight-rooms, and to provide the penalties to be paid to consignors and consignees for delays on the part of railroads to conform to such rules, and prescribe the penalty to be paid by con-

signors and consignees to railroads for failure to observe such rules.

"Sec. 85. The commission is hereby authorized and empowered to adopt, . . . rules governing demurrage and reciprocal demurrage, and to provide reasonable penalties to expedite the prompt movement of freight and release of cars, . . . Any public service company affected thereby, and deeming such rules and regulations, or any of them, improper, unjust, unreasonable, or contrary to law, may within twenty days from the date of service of such order upon it file objections thereto with the commission, specifying the particular grounds of such objections. The commission shall, upon receipt of such objections, fix a time and place for hearing the same, and after a full hearing may make such changes or modifications thereto, if any, as the evidence may justify. . . ." Rem. Code, §§ 8626-10, 8626-11, 8626-59, 8626-85.

It is admitted that sections 59 and 85, if themselves free from constitutional objection, sufficiently authorize the commission to promulgate rule 3 here attacked, so far as the objection now under discussion is concerned.

On the general proposition that the legislature cannot delegate the power to make purely substantive law, there can be no difference of opinion. We shall, therefore, consume no space in discussing the several authorities cited as announcing and sustaining that principle. Nor can there be any difference of opinion as to the soundness of the correlative proposition that the legislature can delegate the power to determine the facts or state of things upon which the law makes its own operation depend. *Locke's Appeal,* 72 Pa. St. 491, 13 Am. Rep. 716; *Carstens v. DeSellem,* 82 Wash. 643, 144 Pac. 934; *Cawsey v. Brickey,* 82 Wash. 653, 144 Pac. 938. The difficulty lies, not in determining the governing principle, but in its application to concrete cases. The constitutional division of all governmental powers into legislative, executive and judicial is abstract and general. Their complete separation in actual practice is impossible. The many complex relations created by modern society and business have produced many situations which can be adequately met only by vesting

in the same administrative officers or bodies powers inherently partaking to some extent of any two or all of these three functions. The intricate, complex and technical nature of the business of common carriers in their relation to the public makes this peculiarly true of legislation looking to the regulation of such business. The power of regulation of such carriers is inherent in the state. In this state, that power may be exercised either directly by the legislature or through the medium of a commission. Constitution, art. 12, § 18.

Though the legislature must itself determine a standard for regulation by which the commission must be guided, that standard need not be, and in the nature of the case cannot be, detailed and specific. It may be couched in general terms, as that the rules and orders of the commission shall be just, fair and reasonable. We have repeatedly held that the legislature may constitutionally confer on the commission judicial powers as a mediatory tribunal, since the constitutional division of governmental powers into the three separate departments applies only in a limited sense and does not restrict one set of officers to one department exclusively. *State ex rel. Oregon R. & Nav. Co. v. Railroad Commission,* 52 Wash. 17, 100 Pac. 179; *State ex rel. Railroad Commission v. Oregon R. & Nav. Co.,* 68 Wash. 160, 123 Pac. 3; *State ex rel. Railroad Commission v. Great Northern R. Co.,* 68 Wash. 257, 123 Pac. 8. It is therefore clear that, before this court can hold that any attempt of the legislature to confer on the commission a given power is void as an unconstitutional delegation of either legislative or judicial power, it must clearly appear that the power in question is purely legislative or judicial, and not merely incidental to some of the administrative powers for the exercise of which the commission was created.

Appellant's attack is particularly directed against sections 59 and 85, above quoted. It is argued that the legislature has not prescribed in these sections any duty to be performed by the carrier nor imposed any penalty for violation of any

duty, but has undertaken to leave to the commission both the imposition of the duty and the penalties for its violation, and that the delegation of this broad discretion is fatal to the act. The initial vice of this argument lies in its false premises. It assumes that these two sections are the whole of the controlling law. They are, however, only a part of one harmonious system for the regulation of common carriers provided by the whole of the public service commission law, the administrative details of which are of necessity left to the commission. Though sections 59 and 85 do not in terms impose upon railroad companies the duty to furnish cars, sections 10 and 11, above quoted, do impose that duty in express terms. The statute itself thus disposes of appellant's first criticism. It only remains to consider whether the delegation of the power to prescribe the so-called penalties to be paid to persons ordering cars by the railroads for their failure to furnish them is unconstitutional as an attempt to delegate the legislative power. Though the statute uses the word "penalty," it is clear that the thing which it actually authorizes the commission to fix is not a penalty, but compensation in the nature of liquidated damages for the failure to furnish cars. What that compensation should be and what free time should be allowed to the railroad company for the furnishing of cars, are things so essentially depending upon varying facts and circumstances as to be, in the language of *Locke's Appeal,* "the subject of inquiry and determination outside of the halls of legislation," and hence peculiarly suitable to be delegated to the commission as incident to its purely administrative powers. In this respect, there is no distinction between prescribing reasonable compensation for delay in returning cars or delay in furnishing cars and in fixing reasonable rates. In this respect, also, there is the same distinction between prescribing such compensation and fixing a penalty in its nature purely punitive, as there is between the fixing of reasonable rates and the prescribing of such penalties. Both the fixing of reasonable rates and the fixing of reasonable demurrage for

the failure to furnish cars, in their nature involve the determination of the question of reasonable compensation.

Touching the question of the delegation of legislative powers, the almost infinite variety of detail and circumstance, and of the laws intended to meet them, have led to an almost equal variety of judicial decision and utterance which, taken in the abstract, cannot be harmonized. A review in detail of the vast array of authorities cited is manifestly impracticable, and any notice not in detail would be wholly useless. We shall, therefore, confine ourselves to an analysis of those cases which present a near parallel to that before us.

In *Southern R. Co. v. Melton*, 133 Ga. 277, 65 S. E. 665, the supreme court of Georgia was confronted with the exact question here involved. The second section of the Georgia railroad commission act of 1905, which is quoted in the opinion, so far as the question under discussion is concerned, did not materially differ from § 59 of our statute above quoted. Rule 9 of the Georgia commission, made pursuant to that section, is also quoted in the opinion, and was not materially different from rule 3 of our public service commission above quoted, save that it contained no exception of cars destined for use on foreign roads. It was held, in substance, that, though the statute designated the reciprocal demurrage as a penalty to be fixed by the commission, it was not in fact penal in its nature, but remedial; that, while the legislature could not delegate to the commission the power to make a penal law, it could delegate the power to fix the time within which cars should be furnished after demand, and a reasonable amount to be recovered by the shipper for the failure to so furnish cars, and that this was no less an administrative detail than the fixing of reasonable rates. The court said:

"The legislature itself enacted the law and outlined the duty and power of the commission on this subject, and indicated the matter to be dealt with by the commission, the pur-

pose of dealing with it, and the authority of the commission
in reference to carrying into effect that purpose. It not only
authorized but required the fixing by 'reasonable rules' of an
amount to be paid per day for failure to furnish cars. It is
difficult to see why the reasoning on which the authority of
the legislature has been upheld to establish a commission and
authorize it to carry into effect the legislative purpose, and,
to that end, to make rules and regulations and fix rates which
should be 'reasonable,' is not applicable to this act. If the
legislature itself could provide in general terms for the mak-
ing of reasonable rates, charges, and regulations, but leave
the details to be carried into effect by the commission, for
the reasons stated in the case of *Georgia Railroad v. Smith,
supra,* and if the legislature also had authority to require the
prompt furnishing of cars by a railroad company, and to
name a reasonable amount recoverable by the shipper for a
default on the part of the carrier in that respect, why could
they not provide for this in general terms, as in the other
case, and leave it to the commission to investigate and declare
by rule what would be a reasonable time and amount?"

In *State v. Atlantic Coast Line R. Co.,* 56 Fla. 617, 47
South. 969, 32 L. R. A. (N. S.) 639, was involved rule eight
of the Florida railroad commission, which, so far as here
concerned, was substantially the same as rule 3 of our com-
mission. The Florida statute, among other things, pro-
vided that the commission should have power:

"To regulate the charges for storage, wharfage and de-
murrage under such just and reasonable conditions as said
commissioners may prescribe  .  .  .   and to direct and con-
trol all other matters pertaining to railroads that shall be
for the good of the public. Said commissioners shall have
full power and authority to require any railroad, railroad
company or common carrier to properly operate its railroad
or transportation line and to furnish all the necessary facili-
ties for the convenient and prompt handling, transportation
and delivery of all freights offered along its line for trans-
portation, and shall provide and prescribe all such rules and
regulations as may be necessary to secure such operation and
the furnishing of such facilities and the prompt handling,
transportation and delivery of all freights offered."

It will be noted that this statute is much less explicit than ours. While the case went off on another point, the court exhaustively discussed the question here involved, and held, at page 649:

"The charge allowed a carrier for cars unduly delayed by a shipper is technically called demurrage, is remedial in its nature, and is clearly not a penalty. So, likewise, the reciprocal charge allowed a shipper for freight unduly delayed on loaded cars by the carrier is in its nature remedial and is not a penalty. The right of a shipper to have his goods promptly transported by a common carrier is a valuable right. See *New Mexico ex rel. McLean v. Denver & Rio Grande Railroad Company*, 203 U. S. 38; Moore on Carriers, 246. The shipper has as much right to relief from a delay in transporting his freight when it is properly offered as the carrier has to relief from a delay of a car unduly held for loading. There may be no injury or depreciation in the value of the car or the freight by a delay, but the right to promptness and convenience exists and may be enforced, and the public has an interest in the prompt movement of cars needed for other shipments. The purpose designed to be accomplished in allowing this reciprocal charge, or in imposing this reciprocal liability, is to afford the carrier and the shipper a limited cumulative remedy to prevent the delaying of cars and of freight, and to incidentally serve the public welfare by stimulating and facilitating the transportation of freight."

Counsel for appellant here say that this is mere dictum, but as pointed out by Judge Lumpkin in *Southern R. Co. v. Melton, supra,* it cannot soundly be so regarded; but even if it were, we agree with the Georgia court in the view that it expresses the true distinction between a penal sanction of the law, which can only be imposed directly by the legislature itself, and remedial redress administrative in its essence, the power to provide for which may be delegated to the administrative commission.

In *Keystone Lumber Yard v. Yazoo & M. V. R. Co.*, 97 Miss. 433, 53 South. 8, 10, the supreme court of Mississippi, adopting the reasoning and much of the language of the Florida court in *State v. Atlantic Coast Line R. Co., supra,*

distinctly held that the fixing of a charge for delay, such as
that here involved, is remedial and in the nature of liquidated
damages, rather than a penalty in the nature of a fine.

Appellant seeks to distinguish the first of these cases from
that before us by the fact that the Georgia statute apparently
made the exercise of the power by the commission mandatory,
while our statute confers the power to make the rule but
does not expressly make its exercise mandatory. We think,
however, that the conferring of the power, when construed
in the light of the entire purpose of our railroad commission
law, impliedly imposes the duty to exercise it. But be that
as it may, the mere fact that a power is discretionary does
not change its nature. Not every discretionary power is
essentially legislative. If, as we have seen, the power con-
ferred by the statute here in question is a power incidental
to the administrative functions of the commission, it was
validly conferred, and the circumstance that its exercise is
discretionary with the commission does not alter that fact.
Both on reason and authority, we are constrained to hold
that neither the statute here in question nor rule 3 made
thereunder is void as an unconstitutional delegation of the
legislative function.

II. Appellant's second contention is that the commission
had no jurisdiction to entertain respondent's complaint or
to make the order awarding reparation. This contention is
based upon the claim that the public service commission law,
chapter 117, Laws 1911, p. 538 (Rem. Code, § 8626-1 *et
seq.*), does not provide for any such hearing, and that rule
12 of the commission providing for such hearing is there-
fore void as an unconstitutional assumption by the commis-
sion of legislative power granting to itself judicial power.
If the sole objection were that the making of this rule was
unauthorized by the public service commission law, appellant
would be precluded from raising it by its failure to contest
the rule within twenty days after its promulgation, as pro-
vided in § 8626-85 of that law. But the objection goes

deeper. It involves a constitutional question which, if well taken, makes the rule absolutely void, and hence contestable at any time and in any proceeding in which it is involved. Undoubtedly, had the public service commission law itself expressly conferred upon the commission authority to have such a hearing as that provided for in rule 12, and limited the effect of any order made on such hearing to a mere *prima facie* establishment of the facts therein determined, this would not have been an unconstitutional delegation of judicial power. The supreme court of the United States has distinctly so held as to authority of that character granted to the interstate commerce commission in the act of Congress to regulate commerce and the acts amendatory thereof. *Meeker v. Lehigh Valley R. Co.*, 236 U. S. 412, Ann. Cas. 1916B 691; *Southern R. Co. v. Atlanta Sand & Supply Co.*, 135 Ga. 35, 68 S. E. 807. But the *conferring* of such authority is clearly the making of substantive law. It is legislation, pure and simple. Though we have held that judicial power may be *conferred by the legislature* upon the commission as incidental to its administrative functions, pursuant to § 18, art. 12 of the state constitution (*State ex rel. Oregon R. & Nav. Co. v. Railroad Commission*, 52 Wash. 17, 100 Pac. 179), neither this court, nor any other court so far as we are advised, has ever held that an administrative body can *assume* the legislative function and confer upon itself the power to make a law giving to itself judicial functions even as incidental to its administrative powers. Herein lies the distinction between the authority of the commission in relation to the subject-matters of rule 3 and rule 12. The authority to make rules for demurrage and reciprocal demurrage and to provide so-called penalties in the nature of compensation for their violation, as exercised in rule 3, was expressly conferred. The authority to have a hearing on any violation of that rule and award such compensation, as assumed in rule 12, was not conferred. We therefore hold that rule 12 is void as an unconstitutional assumption by an adminis-

trative body of both legislative and. judicial power.    The
order made pursuant to that rule is *brutum fulmen.*    It can
have no binding force, either *prima facie* or otherwise.

But it does not follow that respondent warehouse company
was without remedy.    The public service commission law
made it the duty of the railroad company to furnish cars.
It conferred upon the commission the authority to prescribe
the time within which such cars should be furnished and the
compensation to be paid to the shipper by the railroad com-
pany for its failure to perform that duty.    Rule 3 is, there-
fore, a valid rule.    Its violation created a right in the shipper
to recover the prescribed compensation from the railroad
company.    It is the boast of our law that there can be no
right without a corresponding remedy.    When the right is
once created, the common law furnishes the remedy.

The case of *Southern R. Co. v. Atlanta Sand & Supply
Co., supra,* involved a suit by one claiming to have been
damaged by the failure of a railroad company to furnish
cars under rule 9 of the Georgia railroad commission which,
so far as this question is concerned, was substantially the
same as rule 3 here involved.    In addition to section 2 of the
Georgia statute authorizing the making of rule 9, the statute
contained another section, 3, giving to the railroad a hearing
before the commission on any complaint that the rules had
been violated.    After the suit had been commenced, the ship-
per made complaint to the commission under the latter sec-
tion of the statute.    The commission issued citation to the
railroad company to show cause why the rule should not be
enforced.    The railroad company answered by letter, stating
that all orders for cars had been promptly filled and no dis-
crimination practiced, and that, inasmuch as a suit had been
commenced, it was not worth while to answer further.    The
commission thereupon treated this letter as a waiver of fur-
ther hearing, and entered an order ."that sufficient cause had
not been shown to relieve said company of the penalty
claimed."    The supreme court of Georgia held that, since

the statute did not prescribe how the penalty fixed by the commission rule 9 should be recovered, there was a necessary implication that it could only be recovered by a resort to the courts, and that in such suit the railroad company might plead and prove any sufficient excusing causes for noncompliance. The court said:

"The act of this state of August 23, 1905 (Acts 1905, p. 120), does not in terms provide how the shipper is to obtain payment of the 'forfeitures or penalties' prescribed in the second section thereof. This being so, impliedly he must resort to the courts and bring suit therefor."

and again:

"It could not have been the legislative purpose to provide for the obtaining by a shipper of a conclusive judgment against a railroad company, before the commission. That body could not, like a court, render conclusive money judgments between parties. The shipper would have to go to the court finally and seek to recover by suit. The section did not in terms provide for any notice to the shipper or for any hearing on his part. It declared that 'if sufficient cause is shown,' the company 'shall be relieved from any further liability under this act;' but it said nothing as to what would happen if sufficient cause were not shown. It would seem that the shipper could then go ahead and sue."

So far as the question here involved is concerned, the case quoted and that here are identical. Respondent warehouse company must be remitted to its action at law for a recovery. What period of limitation would apply to such an action, and whether the things set up in the answer of the railroad company in the proceeding now before us would state a defense to such an action, we shall not prejudge.

III. Appellant's third contention is that reciprocal demurrage rule 3 is void as an interference with and regulation of interstate commerce. Though the cars here involved were ordered for intrastate use, we cannot avoid a consideration of this question. The rule is indivisible in its provisions. If it must be held to apply to both kinds of commerce and is

void as to one kind, it is void *in toto*. That it is beyond the power of a state, whether by rule or statute, to regulate the delivery of cars for interstate shipments, is now well settled. Reciprocal demurrage rules of a state, therefore, cannot apply to such cars. *Chicago, R. I. & P. R. Co. v. Hardwick Farmers Elevator Co.*, 226 U. S. 426, 46 L. R. A. (N. S.) 203; *Yazoo & Mississippi Valley R. Co. v. Greenwood Grocery Co.*, 227 U. S. 1; *St. Louis, I. M. & S. R. Co. v. Edwards*, 227 U. S. 265; *Oregon R. & Nav. Co. v. Martin*, 229 U. S. 606. The state demurrage laws involved in each of these cases had been construed by the courts of the states, respectively, as applying alike to interstate and intrastate commerce. Neither our demurrage rule 3 nor the statute under which it was promulgated has ever been so construed by this court. But appellant argues that the language of the rule is broad enough to apply to cars ordered for both kinds of commerce, and that therefore the court cannot construe either it or the law as not intended so to apply. Such an argument, if applied to each of the various provisions of our railroad commission law, would defeat many of them as attempts to invade the power of Congress to regulate interstate commerce. Many of these provisions, standing alone, are couched in language broad enough to cover both kinds of commerce. But inasmuch as the dominant purpose of the act, to be gathered from all of its provisions, was merely to regulate intrastate commerce, it seems to us but reasonable to hold that this dominant purpose should be read into all of its provisions. *Ann Arbor R. Co. v. Michigan Railroad Commission*, 163 Mich. 49, 127 N. W. 746, Ann. Cas. 1915A 564; *Pittsburg, C. C. & St. L. R. Co. v. Railroad Commission*, 171 Ind. 189, 86 N. E. 328; *Michigan Railroad Commission v. Michigan Cent. R. Co.*, 168 Mich. 230, 132 N. W. 1068; *Michigan Cent. R. Co. v. Michigan Railroad Commission*, 236 U. S. 615.

Appellant further argues that, because the courts of last resort of certain of the states, at the time the reciprocal demurrage rules of this state were adopted, had held that it was within the power of the states to make such rules applicable to interstate commerce as well as to intrastate commerce, therefore it must be assumed that the legislature and the commission of this state intended our rules to apply to both kinds of commerce. Respondent answers that such an intention cannot be so inferred, because, at the time of the adoption of these rules, the supreme court of the United States in *Houston & T. C. R. Co. v. Mayes*, 201 U. S. 321, and in *St. Louis Southwestern R. Co. v. Arkansas*, 217 U. S. 136, 29 L. R. A. (N. S.) 802, had held the demurrage rules of Texas and Arkansas invalid as applied to interstate commerce. Appellant retorts that these decisions do not hold that no reciprocal demurrage rules of a state could validly apply to interstate commerce, but only that the ones there in question could not so apply because they imposed excessive burdens on interstate carriers and made no allowance for reasonable excuses on the carrier's part for failure to comply with the rules. It is true that neither the decisions cited, nor any other decision of the United States supreme court up to the time of the making of rule 3 by our commission, had expressly reprobated all state demurrage rules as applied to interstate commerce. But the two cases cited had certainly left the power of the states in the premises in a most doubtful condition, and, we think, so much so that no persuasive force can be given to the argument that, because of prior decisions of other state courts sustaining such rules as applied to both kinds of commerce, our legislature and commission must have intended the rules here involved so to apply. The argument, so far as it is entitled to any force, seems to us to look the other way, since we cannot assume that the legislature of this state intended to adopt even doubtfully sound rules.

So far as we are advised, the public service commission has never construed these rules as applicable to interstate commerce, nor attempted to enforce them as to cars ordered for use in such commerce. This court has never construed them as intended to be so applied. To do so now would seem to be a wanton exercise of the power to so construe a law as to make it certainly unconstitutional. Our duty, as we see it, lies the other way.

For the reasons stated in our discussion of the second question involved in this appeal, the order complained of is void. For that reason alone, the judgment is reversed, and the cause is remanded with direction to dismiss the proceeding.

MORRIS, MAIN, PARKER, and CHADWICK, JJ., concur.